**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| D.M. (Mother) and D.M. (Father), individually and on behalf of J.M. and D.P., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| v. | : | NO. 12-6762 |
| | : | |
| COUNTY OF BERKS, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

**Baylson, J.**                                                                               **July 30, 2013**

## I.    INTRODUCTION

This memorandum addresses the novel question of whether a person treated as a

confidential informant under Pennsylvania's Child Protective Services Law ("CSPL"), 23 Pa.

C.S. § 6301 et seq., qualifies as a confidential informant for purposes of the federal informer's

privilege, and, if so, whether federal discovery principles warrant production of information

otherwise protected under the Pennsylvania statute.

Plaintiffs seek redress under 42 U.S.C. § 1983 for damages and other relief arising out of

Defendants' taking of their minor children based on allegations of child abuse.  Plaintiffs, D.M.

("Mother") and D.M. ("Father"), brought this action individually and on behalf of J.M., their

adopted teenage child, and D.P., a two-year old child over whom Mother has legal and primary

physical custody.[1]  In an Order issued last week, the Court granted in part and denied in part

Plaintiffs' motion to compel discovery of certain information, including, but not limited to, the

identity of the initial informant that instigated Defendants' investigation into the abuse

---

[1] In this memorandum, the word "Parents" will refer to the Mother and Father, while the word "Children" will refer to J.M. and D.P.

allegations.  (ECF No. 52).  In this memorandum, the Court will explain its decision to deny the

portion of Plaintiffs' motion that sought discovery of the initial informant's identity.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege that their federal civil rights were violated by the County of Berks, a

government entity that operates and manages Berks County Children and Youth Services

("BCCYS"), and a number of BCCYS's directors and employees.[2]  According to Plaintiffs,

Defendants violated their Fourteenth Amendment substantive due process rights (by coercing the

removal of their children without a reasonable suspicion of past or imminent abuse), their Fourth

Amendment rights (by unlawfully entering their home and seizing their children), their

Fourteenth Amendment procedural due process rights (by, inter alia, failing to provide a post-

deprivation hearing), and their First Amendment rights (by imposing unnecessarily restrictive

barriers to Plaintiffs' ability to communicate or associate with each other after the removal).

On March 14, 2013, the Court denied Defendants' motion to dismiss Plaintiffs' claims.[3]

D.M. v. County of Berks, et al., --- F.Supp.2d ---, 2013 WL 1031824 (E.D. Pa. Mar. 14, 2013).

The Court denied Defendants' motion as to the substantive due process claim because Plaintiffs

alleged facts from which it could be plausibly inferred that Defendants lacked a reasonable

suspicion that the Children had "been abused or [were] in imminent danger of abuse" per Croft

v. Westmoreland Cnty. Children & Youth Servs., 103 F.2d 1123, 1126 (3d Cir. 1997).  The

Court denied Defendants' motion as to the Fourth Amendment claim because Plaintiffs plausibly

alleged that Defendants entered their home without a warrant or consent.  The Court denied

---

[2] The individual Defendants are as follows: George Kovarie, BCCYS's Executive Director; Brandy M. Neider,
BCCYS's Director of Intake; Wendy Kim Seidel, BCCYS's Director of In-Home Services; Barbara A. Jakubek,
BCCYS's Director of Placement; Jennifer L. Grimes and Jennifer L. McCollum, Assistant County Solicitors for
Berks County; Timothy M. Siminski, Lisa Marie Eshbach, and James J. Trupp, III, BCCYS Caseworker
Supervisors; and Brandon M. Clinton and Kathleen A. High, BCCYS Caseworkers.  Am. Compl. ¶¶ 6-13.
[3] The Court also denied Defendants' alternative Motion for a More Definite Statement, in which Defendants sought
to preclude the Parents from proceeding anonymously.

Defendants' motion on Plaintiffs' procedural due process claim because, under B.S. v. Somerset

County, 704 F.3d 250, 271-73 (3d Cir. 2013), a state's failure to provide a post-deprivation

hearing within 40 days of removing a child violates the parent's right "to be promptly heard."

Finally, the Court denied Defendants' motion on the First Amendment claim because Plaintiffs

plausibly alleged that Defendants had less intrusive means of protecting the Children than

barring the Parents from having any contact or communication with them in the weeks

subsequent to the removal.

Central to the discovery dispute underlying the instant motion to compel discovery are

Plaintiffs' Fourth and Fourteenth Amendment claims that Defendants lacked sufficient

justification to enter their home or remove the Children.  In their Amended Complaint, Plaintiffs

allege that Defendants entered their home and removed the Children based on a report from

Parents' estranged adult daughter Danielle, who Defendants knew was embroiled with the

Parents in a bitter custody dispute over Danielle's child.  Three days after Danielle allegedly

contacted BCCYS, Plaintiffs allege that Defendant Brandon Clinton (a BCCYS caseworker),

together with a local police officer, entered Plaintiffs' home without a warrant or consent.  Once

in Plaintiffs' home, Clinton informed the Parents that BCCYS had received an allegation of child

abuse and that if the Parents did not want the Children to be taken into the state's custody they

needed to voluntarily relinquish custody pending the outcome of BCCYS's investigation.

In the instant motion, Plaintiffs seek, inter alia, to discover the identity of the informant

that made the initial allegations of abuse that triggered Defendants' actions.  Plaintiffs believe

that the initial informant's identity is essential to a fair determination of this case based on their

contention that, if Danielle was the informant, Defendants would not have been justified in

entering their home or removing the Children due to Danielle's motive to lie and alleged track record of making unfounded allegations of abuse.

Defendants, who do not concede that Danielle was the informant, have objected to disclosing the informant's identity.  While Defendants have provided Plaintiffs with a copy of the BCCYS case file, they have redacted the documents in a manner that removes references to the initial informant's name.  Defendants argue that this redaction is justified on the grounds that the informant's identity is both irrelevant and privileged.  The informant's identity is irrelevant, Defendants claim, because it was not the basis upon which they decided to remove the Children from the Parents' home.  Defendants insist that the removal decision was based on the investigation they conducted after receiving the informant's report, which included caseworker interviews with three of the Parents' estranged adult children, one of whom was Danielle.[4]  Since the documents that Plaintiffs have already been provided include unredacted caseworker notes for each of the three interviews, Defendants contend that the initial informant's identity is irrelevant.

Even if relevant, however, Defendants argue that the initial informant's identity is privileged information.  The Child Protective Services Law ("CPSL") prohibits child welfare agencies in Pennsylvania from disclosing the identity of those who report child abuse.  23 Pa.C.S. § 6340(c).  Because of this, Defendants argue that the initial informant's identity is protected by the confidential informant privilege long recognized by federal law.  See Mitchell v. Roma, 265 F.2d 633, 635 (3d Cir. 1959) ("The privilege for communications by informers to the government is well established and its soundness cannot be questioned.").

At the Rule 16 Conference on April 23, 2013, the parties informed the Court of their differing positions on the discoverability of the initial informant's identity.  The Court gave

---

[4] Each of the estranged adult children (Danielle, Derrick, and Desiree) reported being abused by the Father.

Plaintiffs leave to file a motion to compel without having to wait for Defendants to formally

object to their request.  Plaintiffs filed their motion on June 19, 2013.  (ECF No. 42).  The

motion requests

> an unredacted copy of any otherwise discoverable documents
> revealing the identity of the referral source of any complaints of
> abuse or neglect regarding Plaintiffs, and the identities of those
> who provided information relating to any investigation that
> followed.   Plaintiffs are also entitled to depose the various
> Defendants and other employees of Berks County regarding the
> identities of such individuals as well as any communications with
> such persons.

Pl's Mot. to Compel at 2.

On July 15, 2013, the Court heard oral argument by counsel on Plaintiffs' motion to

compel as well as Defendants' subsequently filed Motion to Stay.[5]  At the close of argument, the

Court asked defense counsel to submit a supplemental letter clarifying Defendants' position on

several issues, including the circumstances under which Defendants would be prepared to

disclose the informant's identity.  On July 23, 2013, the Court required defense counsel to bring

unredacted copies of documents in Defendants' possession to Chambers where the Court

reviewed them.  (ECF No. 51).  Upon reviewing the documents, some of which Defendants had

withheld in their entirety,[6] the Court issued an Order on July 24 granting in part, and denying in

part, Plaintiffs' motion.  (ECF No. 52).  As a result of the Order, some of the information that

---

[5] On July 9, 2013, Defendants filed a Motion to Stay in which they requested a stay to the federal proceeding pending resolution of a state action in which the BCCYS is seeking to compel the Parents' compliance with the BCCYS's ongoing investigation into the abuse allegations. (ECF No. 47). Defendants filed the motion based on their contention that Plaintiffs are exploiting the broader scope of discovery in this proceeding to obtain otherwise undiscoverable information for the state action.  In the alternative, Defendants' motion requested a protective order that limits Plaintiffs' ability to use information discovered in this case in other proceedings.

[6] The documents that Defendants have withheld include documents from November 5, 2012 and December 3, 2012 containing information from a professional service provider that may be protected by the common law physician-therapist privilege.  As explained in the Court's Order, "[i]f a privilege is asserted, defendants shall serve a privilege log, and the Court presumes that the information in the documents may not be used by either party." (ECF No. 52).

Plaintiffs seek will be produced.  For the reasons addressed below, however, this information

will not include the initial informant's identity.

### III.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 37, parties may move for an order

compelling discovery.  "Parties may obtain discovery regarding any nonprivileged matter that is

relevant to any party's claim or defense . . . ."  Fed. R. Civ. P. 26(b)(1).  Information is relevant

for purposes of discovery if it is "reasonably calculated to lead to the discovery of admissible

evidence."  Id.  Matters relating to discovery are within the "broad discretion" of the trial court.

Superior Offshore Int'l, Inc. v. Bristow Grp., Inc., 490 F. App'x 492, 500 (3d Cir. 2012) (citing

Pub. Loan Co., Inc. v. Fed. Deposit Ins. Corp., 803 F.2d 82, 86 (3d Cir. 1986)).

### IV.   THE PARTIES' ARGUMENTS

### A.    Relevance of the Informant's Identity

The parties vigorously dispute the relevance of the initial informant's identity.  Plaintiffs

contend that the informant's identity is relevant because the person's "motive and credibility" is

central to "the determination of whether there was imminent danger and/or probable cause

warranting the removal of the Children from their home."  Pl's Mot. to Compel at 3.  To

establish a substantive due process violation, for example, Plaintiffs must show that Defendants

lacked "reasonable and articulable evidence giving rise to a reasonable suspicion that a child has

been abused or is in imminent danger of abuse."  Croft, 103 F.3d at 1126.  In Croft, the Third

Circuit held that the county child services agency "lacked objectively reasonable grounds to

believe the child had been sexually abused or was in imminent danger of sexual abuse," because

it "possessed no evidence of abuse beyond an anonymous tip" and the caseworker handling the

case "had no opinion one way or the other whether sexual abuse had occurred."  Id. at 1127.  The

Croft court stated that the child services agency was not "entitled to rely on the unknown

6

credibility of an anonymous informant unless it could corroborate the information through other

sources which would have reduced the chance that the informant was recklessly relating

incorrect information or had purposely distorted information." Id.  Plaintiffs argue that the Croft

decision demonstrates the relevance of knowing the initial informant's identity.

Defendants counter by asserting that, unlike the circumstances in Croft, the informant's

communication in this case (which was not anonymous) "had nothing to do" with the reason they

removed the Children.  Def's Resp. Br. at 4.  While Defendants admit receiving allegations of

abuse from an undisclosed informant, they state that the removal decision was based on

information they subsequently obtained in their follow-up investigation.  Croft is thus

distinguishable, Defendants argue, because the removal decision in Croft was basely solely on an

anonymous tip.  Since Defendants here relied on additional information that corroborated a (non-

anonymous) informant's allegations, Defendants contend that their decision to remove the

Children comports squarely with the standard set forth in Croft.

**B.     Confidential Status of Informant's Identity**

The parties also dispute whether the informant's identity is protected by an evidentiary

privilege.  Defendants argue that the CPSL's confidentiality provisions prohibit them from

disclosing the informant's identity.  The CPSL states that "the release of data that would identify

the person who made a report of suspected child abuse . . . is prohibited unless the secretary finds

that the release will not be detrimental to the safety of that person." 23 Pa. C.S. § 6340(c).  A

person who "willfully releases or permits the release of any information" deemed confidential

under the CPSL "commits a misdemeanor of the third degree." Id. § 6349(b).  Since the CPSL

treats those who report abuse as confidential informants, Defendants argue that the informant's

identity comes within the federal informer's privilege.  Def's Resp. Br. at 6 (citing Rovario v. United States, 353 U.S. 53, 60 (1957)).

Plaintiffs counter by arguing that the Third Circuit in Pearson v. Miller, 211 F.3d 57 (3d Cir. 2009) "rejected any federal privilege based on the CPSL."  Pl's Mot. to Compel at 5.  In Pearson, a child welfare agency objected to disclosing information about the prior behavior of a child in its custody who sexually assaulted the plaintiff's child.  Since the requested information came within the CPSL's confidentiality provisions,[7] the agency argued that it was privileged information.  The Pearson court disagreed.  The court began by noting that "[t]he ultimate issue is whether the discovery sought is permitted as a matter of *federal law*."  Id. at 61 (emphasis added).  The mere fact that information is deemed confidential under state law, the court stated, does not automatically make it privileged under federal law.[8]  Pearson thus treated the defendants' claim to a privilege based on CPSL confidentiality provisions as an assertion of an entirely new federal privilege.  Noting that the Third Circuit "disfavor[s]" the creation of new federal privileges, id. at 67, the Court held that the asserted privilege did not "promote[] sufficiently important interests to outweigh the need for probative evidence," id. at 69 (quoting Trammel v. United States, 445 U.S. 40, 51 (1980)).  Based on the Third Circuit's ruling in Pearson, Plaintiffs argue that Defendants cannot create a federal privilege from the CPSL confidentiality provisions.

Plaintiffs also argue that Defendants cannot invoke the confidential informant privilege because the privilege can only be invoked by "law enforcement officials."  Pl's Reply Br. at 2 (citing Mitchell, 265 F.2d at 635).  Even assuming Defendants can assert the privilege, Plaintiffs

---

[7] The Pearson defendants also cited the confidentiality provisions of the Juvenile Act, 42 Pa. C.S. § 6501 et seq., and Mental Health Procedures Act, 50 Pa. C.S. § 7101 et seq.

[8] Although not necessary to its decision, Pearson questions whether the CPSL even creates a privilege under state law.  See id. at 68 ("On their face . . . these statues do not appear to establish evidentiary privileges constituting a bar to the discovery of relevant information.").

contend that it gives way where, as here, "the identification of an informer is essential to a fair determination of a cause." Id. (citing Mitchell, 265 F.2d at 635). As Plaintiffs note, previous courts have determined that the need for disclosure is "strongest where the informant was a key witness or participant in the events in question." Id. at 2-3 (citing Holman v. Cayce, 873 F.2d 944 (6th Cir. 1989) and Carbajal v. Village of Hempstead, No. 02-4270, 2003 WL 23138447, at *2 (E.D.N.Y. Dec. 22, 2003)). Plaintiffs contend that, if Danielle was the initial informant, the informer's privilege should give way because Danielle "is the one who was allegedly subjected to abuse"[9] and is thus an "active participant" in the events giving rise to this case. Id. at 3.

Plaintiffs further contend that Defendants have waived any confidential informant privilege they may have otherwise had because the privilege "is no longer applicable once the identity of the informer has been disclosed to those who would have cause to resent the communication, and Danielle has divulged, on numerous occasions, her involvement . . . in the BCCYS investigation."[10] Id. at 7. Finally, Plaintiffs argue that "Defendants have also waived the confidential informant privilege by failing to provide a privilege log." Id.

## V.    ANALYSIS

The Court agrees with Plaintiffs that disclosure of the informant's identity is not per se barred by the CPSL's confidentiality provisions. The Court agrees with Defendants, however, that the initial informant's identity comes within the scope of the federal confidential informant privilege. Therefore, because the Court finds that the informant's identity is not essential to a

---

[9] Plaintiffs are incorrect if they mean to imply that Danielle is the only person that alleges being abused by Parents. The notes from the caseworker interviews with Parents' two other estranged children show that both of these children allege abuse as well. Since Defendants have produced unredacted copies of these interview notes, Plaintiffs know the identities of the children who have reported abuse, as well as their specific allegations.

[10] Defendants do not concede that Danielle is the initial informant. As discussed below, the Court has determined that Defendants need not reveal the identity of the initial informant because, in addition to being of questionable relevance in light of Defendants' subsequent investigation, the person is otherwise known to Plaintiffs as having personal knowledge of the subject matter of this case.

fair determination of Plaintiffs' claims, fairness considerations do not warrant overriding the federal privilege in this case.

## A.     <u>Pearson</u> Does Not Control Under the Circumstances Here

The Court has carefully considered the principles stated in <u>Pearson</u>, as it is the leading Third Circuit case on the relationship between state confidentiality provisions and federal discovery requirements.  <u>Pearson</u>'s facts, however, are significantly different than the circumstances here, and thus its holding does not control this case.

In <u>Pearson</u>, the court did not address the confidentiality of an *informant's* identity; it addressed, instead, the confidentiality of records detailing what a child services agency knew about a foster child who sexually assaulted the plaintiff's daughter.  This is a critical distinction because federal law has long recognized a privilege for confidential *informants*.  <u>See, e.g.</u>, <u>Rovario</u>, 353 U.S. at 59-61; <u>Dole v. Local 1942, Int'l Bhd. of Elec. Workers, AFL-CIO</u>, 870 F.2d 368, 372 (7th Cir. 1989); <u>Mitchell</u>, 265 F.2d at 635-36; <u>Chao v. Raceway Petroleum, Inc.</u>, No. 06-3363, 2008 WL 2064354, at *3 (D.N.J. May 14, 2008).  Unlike in <u>Pearson</u>, therefore, this Court does not need to determine whether to recognize a *new* federal privilege.  The Court need only determine whether persons deemed confidential informants under the CPSL qualify as confidential informants for purpose of the federal informer's privilege.

## B.     Informants Under CPSL Are Informants for Purposes of the Federal Privilege

The policy interests underlying the federal informer's privilege are indistinguishable from the policy interests underlying the CPSL's confidentiality protections for people who report abuse.  The purpose of the federal informer's privilege is to "protect 'the public interest in effective law enforcement,' . . . [b]y ensuring the anonymity of those reporting violations of the law" which "'encourages [citizens] to perform that obligation.'"  <u>Chao</u>, 2008 WL 2064354, at *3 (quoting <u>Rovario</u>, 353 U.S. at 59).  The CPSL's confidentiality protections for persons who

report child abuse aim to effectuate the same goal.  In <u>Pearson</u>, the court noted that in order for a child welfare agency to effectively detect and prevent child abuse it is "essential that people be encouraged to make such reports and confidentiality is a valuable tool to that end."[11]  211 F.3d at 70.  Accordingly, "the importance of protecting those who file child abuse reports is clear" and constitutes an interest "of very substantial weight."  <u>Id.</u>

Plaintiffs' argument that only "law enforcement officials" can invoke the informer's privilege is unavailing.  While Plaintiffs correctly observe that "[t]he purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement," <u>Mitchell</u>, 265 F.2d at 635, they fail to explain why a government agency charged with enforcing child welfare laws does not constitute a law enforcement agency.  It is well established that the confidential informant privilege is not limited to criminal law enforcement matters.  <u>See</u> <u>Holman</u>, 873 F.2d at 946 ("Although originally applied in the context of criminal proceedings, the 'informer's privilege' is also applicable in civil cases."); <u>Dole</u>, 870 F.2d at 372 (stating that confidential informant privilege "is arguably greater" in civil cases).  Moreover, the federal informer's privilege has been "frequently asserted" by the Department of Labor "in civil actions brought under the [Fair Labor Standards Act]."  <u>Chao</u>, 2008 WL 2064354, at *3.  If the Department of Labor can invoke the privilege, the Court finds no principled basis to withhold the privilege from child welfare agencies such as BCCYS charged with enforcing laws designed to detect and prevent child abuse.  As the Third Circuit has noted, "it is difficult to overstate the importance of a state's activities directed at the welfare of children," and among these activities "the prevention and detection of child abuse are among the most compelling."  <u>Pearson</u>, 211 F.3d at 70.

---

[11] According to the Pennsylvania Superior Court, one of the "clear functions" of the CPSL's confidentiality provisions is "to encourage reporting of abuse by ensuring that persons with knowledge of abuse are not deterred from reporting it by the prospect of the abuser learning their identity and seeking retribution." <u>Pearson</u>, 211 F.3d at 70 n.15 (quoting <u>V.B.T. v. Fam. Servs. of W. Pa.</u>, 705 A.2d 1325, 1335 (Pa. Super. 1998)).

**C.      Informant's Identity Is Not Essential to a Fair Determination of Plaintiffs' Claims**

The confidential informant privilege is not an unbending or absolute one.  While

"[d]isclosure should not be directed simply to permit a fishing expedition . . . or to gratify the

moving party's curiosity or vengeance," Carbajal, 2003 WL 23138447, at *2, disclosure is

warranted if a trial court determines that the identity of the informer or the contents of his/her

communication "is essential to a fair determination of a cause," Rovario, 353 U.S. at 59.  This

standard has been met where the informant is an indispensable witness or participant in the

events giving rise to the action.  See, e.g., Rosser v. City of Philadelphia, No. 05-514, 2005 WL

1388013, at *1 (E.D. Pa. June 7, 2005).  Based on the Court's in camera review of the documents

in Defendants' possession, the Court has determined that the initial informant's identity is not

"essential to a fair determination" of Plaintiffs' claims.

First, unlike in Croft, it is clear that Defendants did not rely solely on the informant's

report, let alone an anonymous report, as Plaintiffs alleged in their Amended Complaint.

Plaintiffs' reliance on Croft is thus misplaced.  The documents that Plaintiffs already possess

demonstrate that Defendants interviewed three of Parents' estranged adult children prior to

making the removal decision, and each of these children reported being abused.  Because

Plaintiffs have the caseworker notes for these interviews, Plaintiffs already have access to the

information upon which Defendants claim to have relied.  It is unclear, therefore, how the initial

informant's identity or content of his/her communication is essential, let alone relevant, to the

reasonableness of Defendants' removal decision, particularly since Defendants do not cite the

initial informant's communication as buttressing the decision.

Second, although Plaintiffs are not entitled to know the identity of the confidential

informant *qua* informant, that person is named in other documents in the case file to which

Plaintiffs have access.  If Plaintiffs take depositions of persons with personal knowledge,

12

therefore, the initial informant will be included.  Plaintiffs may not, however, ask questions at

any deposition that seek to discover the initial informant's identity.  The Court believes that this

approach provides an appropriate balance and resolution of the issues presented by Plaintiffs'

motion to compel and that the parties should now pursue factual discovery.


O:\CIVIL 12\12-6762 D.M. v. couty of berks\opinion_mtc.docx